IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANIEL ROGERS and TRINA HAWTHORNE, on behalf of themselves and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) ) | Case No.: |
| v. ) ) | |
| AMERICAN FAMILY, INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs Daniel Rogers and Trina Hawthorne bring this class action on behalf of themselves and all others similarly situated, by and through undersigned counsel, and for their Complaint against Defendant American Family Insurance Company ("American Family" or "Defendant") state and allege as follows:

**INTRODUCTION**

1. This is a class action in which Plaintiffs seek to represent insureds in Illinois and Ohio who received a payment for the loss of a totaled vehicle where American Family used valuation reports prepared by Audatex North America, Inc. ("Audatex") to determine the actual cash value ("ACV") of the insured vehicles. Under the terms of its insurance policy, American Family possesses a duty to pay, and represents that it does pay, the ACV of the insured vehicle when adjusting total-loss claims. American Family, however, fails to do so—instead, it systemically thumbs the scale against its insureds when calculating the ACV of their vehicles by applying so-called "Typical Negotiation Deductions."

2. Instead of using the internet list price of comparable vehicles, American Family improperly reduces that list price, and in turn the overall ACV amount, by applying Typical Negotiation Deductions without any documentation that the assumed discount was available on the comparable vehicle in question. These adjustments are based on the factually erroneous assumption that, during the Class period, insureds would be able to negotiate a reduction in the list price of comparable used automobiles, which during the Class period would be highly atypical and contrary to the modern used car industry's market pricing and inventory management practices.

3. Indeed, Defendant applies the Typical Negotiation Deduction without contacting the identified dealerships or sellers or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based Typical Negotiation Deduction, Defendant ignored that, at least since long before the Class Period, used car dealers typically price vehicles to market and do not deviate from that advertised price in cash transactions. It would be *atypical* for – as Defendant wrongly presumes – a used car dealer to routinely price above market with the hopes of duping some customer into agreeing to an above-market deal but with the expectation of probably having to negotiate down from that price. That is simply not how the market works anymore, given, amongst other things, the ubiquity of Internet advertising and shopping and the development of sophisticated pricing tools (for dealers) and comparison tools (for consumers).

4. Moreover, Audatex has access to extensive empirical data – including sales data from state DMV offices – that affirmatively demonstrates that used vehicles typically sell for their internet list price. This data show that cars selling for list price is the most common outcome and that, on average, cars sell for internet list price.

5. The Typical Negotiation Deductions also are contrary to appraisal standards and methodologies that do not permit arbitrary adjustments not based on observed and verifiable data. The impropriety and arbitrariness of American Family's Typical Negotiation Deductions are further demonstrated by the fact that: (a) they are not applied by the major competitor of American Family's vendor; and (b) not applied by American Family to insureds in other states, including California.

6. This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through the systemic use of these factually erroneous adjustments, which benefits the insurer at the expense of the insured, violates American Family's policies with their insureds.

## JURISDICTION AND VENUE

7. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiffs and the proposed class members are citizens of the States of Ohio and Illinois, respectively. Defendant is a Wisconsin corporation that has its principal place of business in Wisconsin. American Family provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

8. Plaintiffs estimate that there are far more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Typical Negotiation Deductions that were deceptively deducted) claimed by Plaintiffs and the Class are estimated in good faith to exceed $5,000,000.00.

9. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in this District. Defendant transacts business and resides in this District.

**PARTIES**

10. Plaintiff Trina Hawthorne resides in Toledo, Ohio, and is a citizen of the State of Ohio. At all relevant times hereto, Plaintiff Hawthorne contracted with American Family for automobile insurance. Plaintiff Hawthorne's insured vehicle was deemed a total loss, and her claim was adjusted, by American Family in or about July 2017.

11. Plaintiff Daniel Rogers resides in Chicago, Illinois, and is a citizen of the State of Illinois. At all relevant times hereto, Plaintiff Rogers contracted with American Family for automobile insurance. Plaintiff Hawthorne's insured vehicle was deemed a total loss, and her claim was adjusted, by American Family in or about February 2020.

12. Defendant American Family Mutual Automobile Insurance Company is an automobile insurance company that owns numerous offices throughout the United States, including the State of Wisconsin. Defendant American Family's corporate headquarters are located in Madison, Wisconsin.

**FACTUAL ALLEGATIONS**

13. Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor through a system called "AudaExplore" which provides what it calls an "Autosource Market-Driven Valuation."

14. The AudaExplore system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle. This is a legitimate and proper method for calculating the market value of a vehicle, and Plaintiffs do not contest any of these elements of Defendant's methodology. Indeed, this method accurately identifies the market value of totaled vehicles.

15. American Family, however, does not stop there: In violation of Ohio and Illinois law and the Policy obligation to pay ACV, Defendant applies unfounded, false, and capricious Typical Negotiation Deductions.

16. Defendant represents that the Typical Negotiation Deduction reflects that "the selling price may be substantially less than the asking price." But Defendant does not actually base the deduction on conversations with the sellers of the comparable vehicles reflecting that they are willing to sell the vehicle for substantially less than the internet list price. Nor is it based on statistically valid data or calculations. Defendant's Typical Negotiation Deduction is arbitrary, conflicts with data (including DMV data) demonstrating that vehicles typically sell for the internet list price, and is nothing more than an illegitimate and capricious way to undervalue the total-loss vehicles.

17. Plaintiff Hawthorne owned a 2015 Jeep Patriot High Altitude 2WD 4D Wagon that was deemed a total loss by Defendant.

18. Like all members of the Ohio Class, Plaintiff Hawthorne made a first-party property damage claim with American Family.

19. Like all members of the Ohio Class, American Family declared Plaintiff Hawthorne's vehicle to be a total loss.

20. Pursuant to the terms of her contract, which are, and have been, substantively identical for all members of the putative Ohio Class during the Class period, American Family elected to pay Plaintiff Hawthorne based on the ACV of his insured vehicle (albeit in an insufficient amount).

21. When calculating its valuations and claims payments, American Family systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action.

22. As set forth above, this process involves obtaining a "Market-Driven Valuation" report from Audatex (in which American Family chooses to apply Typical Negotiation Deductions), and then using and relying upon the valuation provided to determine the benefit payment under the insured's policy.

23. American Family provided a Market-Driven Valuation to Plaintiff Hawthorne in 2017. *See* Exhibit 1.

24. American Family valued Plaintiff Hawthorne's total loss vehicle at $16,980.00. *Id*. at pgs. 1–2.

25. To arrive at that valuation, the Market-Driven Valuation report provided the prices of five different comparable vehicles advertised for sale online and applied a Typical Negotiation Deduction to each comparable vehicle of 5%. *Id*. at pp. 2–4. The Market-Driven Valuation report stated makes the claim that "[i]n the case of this 2015 Jeep Patriot, the difference between the asking price and selling price is generally 5%." *Id.* at p. 3.

26. The use of the Typical Negotiation Deduction to adjust Plaintiff Hawthorne's total loss claim downward violates the applicable insurance policy, in that these adjustments are unfounded, are factually erroneous, and result in American Family paying Plaintiff Hawthorne less than the actual cash value of her total loss vehicle that she was entitled to by contract.

27. Plaintiff Rogers sustained damage to his 2019 Hyundai Sonata SE 4D Sedan on January 12, 2020, and submitted a property damage claim. As with Plaintiff Hawthorne and all Illinois Class Members, American Family determined that the vehicle was a total loss.

28. American Family provided a Market-Driven Valuation to Plaintiff Rogers. *See* Exhibit 2.

29. American Family valued Plaintiff Rogers' total loss vehicle at $18,519.00. *Id*. at pp. 1–2.

30. To arrive at that valuation, the Market-Driven Valuation report provided the prices of five different comparable vehicles advertised for sale online and applied a Typical Negotiation Deduction to each comparable vehicle of approximately 5%. *Id*. at pp. 2–4.

31. The use of the Typical Negotiation Deduction to adjust Plaintiff Rogers' total loss claim downward violates the applicable insurance policy, in that these adjustments are unfounded, are factually erroneous, and result in American Family paying Plaintiff Rogers less than the actual cash value of his total loss vehicle that he was entitled to by contract.

32. In truth, American Family's Typical Negotiation Deduction do not reflect market realities and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition brought about by consumers' ability to comparison shop for used vehicles online. During the Class period, a negotiated discount on a cash purchase would be atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment simply because "the selling price *may* be substantially less than the asking price" is particularly improper in the context of this action. Insureds who have suffered a total loss of their vehicle and need to procure a replacement have limited time to search out the illusory opportunity to obtain the below-market deal American Family assumes, wrongly, to always exist. *See* Exhibit 1 at p. 5 (emphasis added).

33. Moreover, American Family's Typical Negotiation Deductions are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles. American Family begins the process of valuing total loss vehicles using a comparative methodology but improperly deviates from that process by thumbing the scales against its insureds. American Family documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiffs do not challenge these documented adjustments in this action. At this stage of the process, American Family abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining actual cash value. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections and assumptions.

34. The impropriety and arbitrariness of American Family's Typical Negotiation Deductions are further demonstrated by the fact that Audatex's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply these adjustments. Instead, CCC Intelligent Solutions uses list prices.

35. The impropriety and arbitrariness of American Family's Typical Negotiation Deductions are further demonstrated by the fact that it does not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Ohio and Illinois while not subjecting California claimants to the same negative adjustments.

36. Plaintiffs and each member of the putative Classes were damaged by American Family's application of these Typical Negotiation Deductions because they were not paid the

actual cash value, which they would have received had American Family applied proper methodologies and appraisal standards consistent with their contractual obligations and representations.

37. Were it not for this improper, factually erroneous adjustment, the "Market Value" in each valuation report would have been higher, resulting in a higher payment to insureds for actual cash value. Specifically, were it not for this unfounded, factually erroneous adjustment, American Family's payment to Plaintiff Rogers would have been $872.20 higher, and its payment to Plaintiff Hawthorne would have been $885.60 higher,[1] before adding the related increase in payments for applicable sales taxes. Said another way, the ACV of Plaintiff Rogers' vehicle was $872.20 higher than American Family represented it was, and the ACV of Plaintiff Hawthorne's vehicle was $885.60 higher than American Family represented it was.

## CLASS ACTION ALLEGATIONS

38. This action is brought by Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under the provisions of Rule 23 of the Federal Rules of Civil Procedure, for damages, plus interest, costs, and attorney's fees. Plaintiffs seek certification of this action as a class action on behalf of the following classes:

> **Ohio Class**. All Ohio citizens insured by Defendant who, from the earliest allowable time through the date an order granting class certification is entered, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.
>
> **Illinois Class**. All Illinois citizens insured by Defendant who, from the earliest allowable time through the date an order granting class certification is entered, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

---

[1] $872.20 is the average of the Typical Negotiation Deduction applied to each of the comparable vehicles in Plaintiff Rogers' valuation report, and $885.60 is the doverage of the Typical Negotiation Deductions in Plaintiff Hawthorne's report.

39. Excluded from the Class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers and directors of Defendant and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action.

40. **Numerosity (Rule 23(a)(1).** The exact number of members of the Classes, as herein identified and described, is not known, but it is estimated that each Class includes thousands of members. Accordingly, the Classes are so numerous that joinder of individual members herein is impracticable.

41. **Commonality (Rule 23(a)(2)).** There are common questions of law and fact in the action that relate to and affect the rights of each member of the Classes, and the relief sought is common to the entirety of both Classes. In particular, the common questions of law and fact include:

   a. Whether American Family systemically applied Typical Negotiation Deductions or substantially similar adjustments to calculate the value of total loss vehicles;

   b. Whether, through the above referenced practice, American Family failed to pay its insureds the actual cash value of their total loss vehicles;

   c. Whether, through the above referenced practice, American Family breached its contracts with its insureds;

   d. Whether Plaintiffs and members of the Class are entitled to compensatory damages in the amount of the invalid adjustment applied to Plaintiffs' and each Class member's valuation.

42. **Typicality (Rule 23(a)(3)).** The claims of the Plaintiffs, who are representative of the Classes herein, are typical of the claims of the proposed Classes in that the claims of all

members of the proposed Classes, including the Plaintiffs, depend on a showing of the same acts of American Family, giving rise to the right of Plaintiffs to the relief sought herein. There is no conflict between the individually named Plaintiffs and other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

43. **Adequacy (Rule 23(a)(4)).** The named Plaintiffs are representative parties for the Classes, and are able to, and will fairly and adequately, protect the interests of the Classes. The attorneys for Plaintiffs and the Classes are experienced and capable in complex civil litigation, insurance litigation, and class actions.

44. **Predominance & Superiority (Rule 23(b)(3)).** Class certification is appropriate under Rule 23 because the common questions of law and fact in this case predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by Class members whose claims are too small and complex to individually litigate against a large corporate defendant.

45. **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

A. **Claims of the Ohio Class**

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

46. Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

47. This claim is brought by Plaintiff Hawthorne on behalf of the Ohio Class.

48. American Family's insurance contract with its insureds provides coverage for the total loss of a vehicle on the basis of actual cash value or replacement with another of like kind and quality.

49. Moreover, American Family's calculation of actual cash value must be based in market realities, not on speculation or conjecture.

50. Defendant, however, failed to pay the actual cash value of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious Typical Negotiation Deduction to comparable vehicles in order to reduce their market value and, as a result, Defendant's total loss payments to insureds.

51. American Family's breaches have resulted in a systemic failure to pay the actual cash value of total loss vehicles as required under the contract.

52. American Family's breaches of contract and violations of law have caused damages to Plaintiffs and members of the Class. Plaintiffs and proposed Class members' damages include the amounts improperly deducted by American Family from the insureds' payments on the basis of a Typical Negotiation Deduction. Specifically, Plaintiff Hawthorne's compensatory damages are $885.60, exclusive of the taxes and fees owed on that amount.

**SECOND CAUSE OF ACTION**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

53. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–45.

54. This claim is brought by Plaintiff Hawthorne on behalf of the Ohio Class.

55. Under Ohio law, because a fiduciary relationship exists in the context of insurance contracts, an insurer has a duty to act in good faith in handling the claims of its insured. An insurer who acts in bad faith in handling the claims of its insured breaches the duty of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

56. Through the use of improper and unfounded Typical Negotiation Deductions in Audatex Market-Driven Valuation reports, American Family failed to act in good faith and did not deal fairly.

57. In the alternative to her claim for express breach of contract, Plaintiff Hawthorne brings this claim for breach of the covenant of good faith and fair dealing.

58. Defendant's application of an arbitrary and statistically invalid Typical Negotiation Deduction was made in bad faith for no purpose other than to minimize Defendant's payments under its insurance contracts.

59. Moreover, to the extent Defendant possesses some level of discretion in calculating ACV, Defendant did not exercise that discretion in good faith by simply ignoring, excluding, or tossing all data showing transactions where the sold price equaled or exceeded the vehicle's list price.

60. Defendant also did not exercise that discretion in good faith by assuming any difference between sold and list price is attributable to negotiation off the cash price, and not other reasons unrelated to true market price, such as, for example, a loyalty discount or employee

discount or friends/family discount, or because the purchaser agreed to finance the purchase through the dealership.

61. Every baseless and arbitrary assumption by American Family was to the detriment of its insureds and to its own benefit.

62. Even in the light most charitable to Defendant, the Typical Negotiation Deduction was not applied in good faith. Defendant uniformly applied the Typical Negotiation Deduction despite not conducting any independent research or analysis to confirm or test its statistical validity, whether it accurately reflected market value, or whether it was consistent with market forces.

63. As a result, Plaintiffs and members of the putative Class are entitled to compensatory damages, including all foreseeable damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

B. **Claims of the Illinois Class**

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

64. Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

65. This claim is brought by Plaintiff Rogers on behalf of the Illinois Class.

66. American Family's insurance contract with its insureds provides coverage for the total loss of a vehicle on the basis of actual cash value or replacement with another of like kind and quality.

67. Moreover, American Family's calculation of actual cash value must be based in market realities, not on speculation or conjecture.

68. Defendant, however, failed to pay the actual cash value of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious Typical Negotiation Deduction to comparable vehicles in order to reduce their market value and, as a result, Defendant's total loss payments to insureds.

69. American Family's breaches have resulted in a systemic failure to pay the actual cash value of total loss vehicles as required under the contract.

70. American Family's breaches have resulted in a systemic failure to pay the actual cash value of total loss vehicles as required under the contract.

71. American Family's breaches of contract and violations of law have caused damages to Plaintiffs and members of the Class. Plaintiffs and proposed Class members' damages include the amounts improperly deducted by American Family from the insureds' payments on the basis of a Typical Negotiation Deduction. Specifically, Plaintiff Rogers' compensatory damages are $872.20, exclusive of the taxes and fees owed on that amount.

## FOURTH CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

72. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–45.

73. In addition to the express terms of the contract, Illinois law implies a promise between the parties that they will act in good faith and deal fairly with one another in performing their obligations under the contract. The covenant requires that any discretion in performing a term of the contract be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.

74. In the alternative to their claims for express breach of contract, Plaintiffs bring this claim for breach of the covenant of good faith and fair dealing.

75. Defendant's application of an arbitrary and statistically invalid Typical Negotiation Deduction was made in bad faith for no purpose other than to minimize Defendant's payments under its insurance contracts.

76. Moreover, to the extent Defendant possesses some level of discretion in calculating ACV, Defendant did not exercise that discretion in good faith by simply ignoring, excluding, or tossing all data showing transactions where the sold price equaled or exceeded the vehicle's list price.

77. Defendant also did not exercise that discretion in good faith by assuming any difference between sold and list price is attributable to negotiation off the cash price, and not other reasons unrelated to true market price, such as, for example, a loyalty discount or employee discount or friends/family discount, or because the purchaser agreed to finance the purchase through the dealership.

78. Every baseless and arbitrary assumption by American Family was to the detriment of its insureds and to its own benefit.

79. Even in the light most charitable to Defendant, the Typical Negotiation Deduction was not applied in good faith. Defendant uniformly applied the Typical Negotiation Deduction despite not conducting any independent research or analysis to confirm or test its statistical validity, whether it accurately reflected market value, or whether it was consistent with market forces.

80. As a result, Plaintiffs and members of the putative Class are entitled to compensatory damages, including all foreseeable damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a) determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as class representatives, and appoint undersigned counsel as Class Counsel;

b) enter an order finding that American Family's actions described herein constitute a breach of express contract and/or a violation of the covenant of good faith and fair dealing;

c) enter an order enjoining American Family from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Deductions;

d) enter an order requiring American Family to pay compensatory damages to Plaintiffs and all members of the putative Class in the amount of 100% of the proceeds that American Family wrongfully deducted from its insureds' payments in the form of Typical Negotiation Deductions and related underpayment of taxes;

e) award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

f) award reasonable attorneys' fees and costs pursuant to applicable law; and

g) grant such other legal and equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs and members of the Class hereby request a trial by jury.

Dated: April 21, 2023

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.*
Florida Bar No. 0100537
Adam A. Schwartzbaum, Esq.*
Florida Bar No. 0093014
Scott@edelsberglaw.com
adam@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

**NORMAND PLLC**
Edmund A. Normand *
Email: ed@normandpllc.com
Jacob L. Phillips*
Email: Jacob.phillips@normandpllc.com
Joshua R. Jacobson *
Email: jjacobson@normandpllc.com
Email: ean@normandpllc.com
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175

*Pro hac vice forthcoming*
**Counsel for Plaintiffs and the Proposed Class**